# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

In re:

Florida Extruders International, Inc.

Debtor.

_____/

Case No.:  8:11-bk-07761-RKM

Chapter 11

## FINAL ORDER (I) AUTHORIZING DEBTOR TO USE CASH COLLATERAL, (II) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING ON A SUPERPRIORITY, SECURED AND PRIMING BASIS, (III) MODIFYING THE AUTOMATIC STAY, (IV) APPROVING SONEET R. KAPILA AS CHIEF RESTRUCTURING OFFICER, (V) GRANTING INTERIM RELIEF, AND (VI) SCHEDULING A FINAL HEARING

This matter is before the Court on the motion of Florida Extruders International, Inc. (the "**Debtor**"), for entry of an order under 11 U.S.C. §§ 105, 362, 363, 364, 541 and 1105 of 11 U.S.C. §§ 101, et. seq. (the "**Bankruptcy Code**") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (i) authorizing the Debtor to use cash collateral, (ii) authorizing the Debtor to obtain post-petition financing by granting security interests on a super-priority, secured and priming basis; (iii) modifying the automatic stay as to Debtor's primary secured creditor, Wells Fargo Bank, N.A., as successor to Wachovia Bank, National Association and SouthTrust Bank ("**Wells Fargo**"); (iv) approving Soneet R. Kapila as Chief Restructuring Officer of the Debtor; (v) granting interim relief, and (vi) scheduling a final hearing (Doc. No. 8, the "**Motion**").

On April 28, 2011, this Court conducted a preliminary hearing on the Motion (the "**Interim Hearing**") and on April 29, 2011, entered an interim order approving the Motion (Doc. No. 35; the "**Interim Order**").  On May 24, 2011, the Court held a final evidentiary hearing on the Motion (the "**Final Hearing**").  Upon the record made by the Debtor at the Interim Hearing

and the Final Hearing, including proffers made as to the terms of a stipulated settlement agreement reached between the Debtor, Wells Fargo and counsel for the Committee of Unsecured Creditors, and the Court finding good and sufficient cause, the Court makes the following findings of fact and conclusions of law (to the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa):

The Court finds and determines:

A.    On April 25, 2011 (the **"Petition Date"**), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

B.    The Debtor continues to operate its business and manage its assets as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

C.    This Court has jurisdiction pursuant to 28 U.S.C. §§157(b) and 1334. Consideration of the Motion constitutes a core proceeding, as defined in 28 U.S.C. §157(b) (2). Venue for the Debtor's Chapter 11 case and the Motion is the Middle District and is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Wells Fargo, as lender, and the Debtor, as borrower, are parties to (i) a Revolving Line of Credit dated May 19, 2008, in the original principal amount of $10,000,000, (ii) a Real Estate Term Loan dated July 10, 2007, in the original principal amount of $4,155,933.63, (iii) an Equipment Guidance Line Loan dated March 18, 2005, in the original principal amount of $10,000,000, (iv) a $598,285.22 outstanding letter of credit issued by Wells Fargo at the request of the Debtor as Applicant in favor of Liberty Mutual Insurance Company as Beneficiary (the **"Letter of Credit"**), and (v) an interest rate swap transaction with reference number 1724698 evidenced by a Swap Transaction Confirmation dated February 1, 2008, part of and subject to the ISDA Master Agreement and Schedule thereto dated January 30, 2008 (the **"Swap**

*Agreement"*) with a determined early termination fee of $161,600 (collectively, the ***"Pre-Petition Loans"***). The Pre-Petition Loans are valid, binding, obligations unconditionally owing by the Debtor to Wells Fargo, without offset, defense or counterclaim of any kind, nature and description whatsoever.

E.      As of the Petition Date, the outstanding principal and accrued, but unpaid, interest owed to Wells Fargo under the Pre-Petition Loans is approximately $13,200,000, including a contingent liability under the Letter of Credit.

F.      The Pre-Petition Loans are secured by perfected, valid, binding and non-avoidable first priority liens and security interests, not subject to any offset, defense or counterclaim, on most of the Debtor's real and personal property used in its business (collectively, the ***"Wells Fargo Pre-Petition Collateral"***).

G.      The Wells Fargo Pre-Petition Collateral includes as of the Petition Date over $3,000,000 in cash, accounts receivable and other cash equivalents (collectively, the ***"Cash Collateral"***). The Debtor cannot fund its day-to-day operations without the use of the Cash Collateral. And, even with the use of Cash Collateral, the Debtor needs additional capital if it is to recognize the highest value of its assets through a sale of its business as a going concern. The Debtor's cash disbursements over the next 13 weeks are projected to exceed its cash receipts by approximately $1,100,000.

H.      The Debtor cannot reorganize unless it is able to use cash collateral and obtain post-petition financing for its business operation. The Debtor believes the highest value of its assets can best be realized through a sale of its business operations as a going concern. In order to continue its operations until its business can be sold, the Debtor must use cash collateral and must also obtain the post-petition financing on the terms set forth below.

I.    Despite diligent efforts, the Debtor has been unable to obtain financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense or solely in exchange for the grant of a special administrative expense priority pursuant to Section 364(c)(1) of the Bankruptcy Code.  The Debtor also is unable to obtain financing in the form of credit secured by liens that are junior to existing liens on property of the estate pursuant to Section 364(c)(2) and (c)(3) of the Bankruptcy Code.

J.    Following negotiation, the Debtor and Wells Fargo have agreed to the terms of a revolving line of credit facility (the ***"Revolving Loan"***) that would allow the Debtor to use Cash Collateral and obtain post-petition working capital up to an aggregate principal amount not to exceed $3,000,000 (the ***"DIP Financing"***).[1]  The terms of the DIP Financing are conditioned, in part, on the approval of a Chief Restructuring Officer (***"CRO"***).

K.    Wells Fargo is willing to establish the DIP Financing upon the terms and conditions set forth in this Final Order and a loan agreement to be entered into by the Debtor and Wells Fargo upon entry of the Final Order (together with all schedules and exhibits, and as at any time amended or restated, the ***"DIP Loan Agreement"***).[2]

L.    The willingness of Wells Fargo to establish the DIP Financing is conditioned upon, among other things, (i) the Debtor granting to Wells Fargo as security for the prompt payment and performance of all of its obligations under the DIP Loan Agreement, first priority liens and security interests in the Collateral, all of which will prime and be senior to any pre-petition liens or security interests and (ii) no party in interest in this Chapter 11 case having

---

[1]  Upon request of the Chief Restructuring Officer and with the written approval of Wells Fargo, which approval may be granted or withheld by Wells Fargo in its sole discretion, the credit amount available to be drawn may be increased up to an aggregate amount not exceeding the sum of $7,500,000.

[2] All capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion.

challenged in any manner the amount, validity or priority of the Pre-Petition Loans, Wells Fargo's liens or security interests in the Wells Fargo Pre-Petition Collateral, the Revolving Loan, the DIP Loan Agreement or the DIP Liens (as defined below). In addition, the DIP Financing requires as adequate protection to Wells Fargo for the Debtor's use of Cash Collateral that the Debtor grant Wells Fargo replacement liens on all post-petition Cash Collateral, notwithstanding Section 552 of the Bankruptcy Code.

M.      To satisfy the requirements of Wells Fargo with respect to the Collateral, the Debtor will grant to Wells Fargo a priming lien and security interest pursuant to Section 364 of the Bankruptcy Code. Wells Fargo's liens against the Collateral securing the Debtor's obligations under the DIP Loan Agreement shall, in each case: (a) collateralize super-priority secured claims under Section 364 of the Bankruptcy Code; (b) constitute perfected, valid, binding and non-avoidable first priority liens on all Collateral, which shall prime any liens existing on the Petition Date other than any valid and perfected liens or security liens in favor of any governmental entity for unpaid property taxes.

N.      The Debtor has certified that on May 3, 2011, it sent a copy of the Interim Order and a Notice of Final Hearing by first class mail, to counsel for Wells Fargo, the United States Trustee, the Internal Revenue Service, parties in interest in the Collateral and all parties who have filed requests for notices under Rule 2002 of the Bankruptcy Rules. The Court finds that such notice is sufficient for all purposes under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure including, without limitation, Sections 102(1) and 364 of the Bankruptcy Code and Rules 9014, 4001(b) and (c) and no further notice of, or hearing on, the Motion is necessary or required.

O.     Good cause has been shown for entry of this Final Order and for the Debtor's use of Cash Collateral and obtaining the DIP Financing pursuant to the DIP Loan Agreement pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2) .  The Debtor's need for financing of the type afforded under the DIP Loan Agreement is necessary to avoid immediate and irreparable harm to the Debtor's estate.  Entry of this Final Order will minimize disruption of the Debtor's business operations as a going concern, will preserve the assets of the Debtor's estates, and is in the best interests of the Debtor, its creditors and estate.  The terms of the proposed DIP Financing appear fair and reasonable, reflect the Debtor's exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

P.     Based upon the evidence presented at the Final Hearing, it appears that the DIP Loan Agreement has been negotiated in good faith and at arm's length between the Debtor, on the one hand, and Wells Fargo, on the other.  Therefore, all extensions of credit to the Debtor pursuant to the DIP Loan Agreement are deemed to have been made in good faith within the meaning of Section 364(e) of the Bankruptcy Code.  Wells Fargo is entitled to all of the benefits of Section 364(e) of the Bankruptcy Code.

Q.     To the extent any party appearing in this Case has made an objection to the relief sought in the Motion, such objection(s) are incorporated in this Order, and if not so incorporated, then such objection(s) are overruled.

Based upon the foregoing, it is therefore ordered:

1.     <u>Grant of Motion; Authorization of Financing on a Final Basis</u>.  The Motion is granted and the Debtor is authorized (i) to execute and deliver the DIP Loan Agreement filed with the Court on May 10, 2011 (Doc. No. 56) and all instruments, security agreements, assignments, pledges, mortgages and other documents referred to in the Motion as

requested by Wells Fargo to give effect to the terms thereof; (ii) to continue to use Cash Collateral solely in accordance with the DIP Loan Agreement and the CRO Budget filed with the Court on May 10, 2011 (Doc. No. 54) (the ***"CRO Budget"***); (iii) to continue to obtain post-petition financing in accordance with the DIP Loan Agreement from up to an aggregate principal amount not to exceed the lesser of $3,000,000 or 105% of the Amount Required to Borrow pursuant to the CRO Budget,[3] and to incur any and all liabilities and obligations under the DIP Loan Agreement.

2.     <u>Execution and Delivery of DIP Financing Documents</u>.  Upon execution and delivery, the DIP Loan Agreement is approved in all respects and constitutes a valid and binding obligation of the Debtor, enforceable against the Debtor in accordance with its terms.  In furtherance of the provisions of paragraph 1 of this Order, the Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, pledge agreements, mortgages, deeds of trust, deposit account control agreements, financing statements and intellectual property filings), and to pay all filing and recording fees, in each case as may be necessary or, in the opinion of Wells Fargo, desirable to give effect to any of the terms and conditions of the DIP Financing, to validate the perfection of the DIP Liens (as defined below) or as otherwise required or contemplated by the DIP Financing.

3.     <u>DIP Liens</u>.  Pursuant to Section 364 of the Bankruptcy Code,  Wells Fargo is granted liens against the Collateral to secure the obligations of the Debtor under the DIP Financing and such liens constitute from and after the Petition Date, perfected, valid, binding and

---

[3] Upon request of the Chief Restructuring Officer and with the written approval of Wells Fargo, which approval may be granted or withheld by Wells Fargo in its sole discretion, the credit amount available to be drawn may be increased up to an aggregate amount not exceeding the sum of $7,500,000.

non-avoidable first priority liens on all junior lien Collateral (and a lien junior only to Hunter Douglas, Inc. on the 2305 Beardall Property), which shall prime any liens existing on the Petition Date, other than any valid perfected liens of governmental units for unpaid property taxes (collectively, the *"DIP Liens"*).

4.  <u>Super-Priority Claims</u>.  For all obligations of the Debtor now or hereafter existing arising under the DIP Loan Agreement from and after the Petition Date, Wells Fargo is granted an allowed super-priority claim pursuant to Section 364(c)(1) of the Bankruptcy Code, which claim shall have priority over any and all administrative expenses and all other claims, now existing or hereafter arising, of any kind whatsoever including, without limitation, any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such claims or expenses may become secured by a judgment lien or other non-consensual lien, levy or attachment; provided, however, that this paragraph shall not apply to the statutory fees of a Chapter 7 trustee.

5.  <u>Replacement Liens</u>.  Wells Fargo is granted replacement liens and security interests on all of the Debtor's post-petition cash, accounts receivable and cash equivalents as security for the Pre-Petition Loans, notwithstanding Section 552 of the Bankruptcy Code.

6.  <u>Application of Cash to Wells Fargo's Pre-Petition Loans</u>.   All cash recovered by the Debtor from sales, collection of accounts receivable or otherwise shall be applied to reduce Wells Fargo's Pre-Petition Loans to the Debtor and shall then be available to

be advanced under the Revolving Loan as required by the CRO Budget up to and not exceeding the maximum amount of the Revolving Loan.

7. <u>Use of Proceeds</u>. Subject to the CRO Budget as approved by Wells Fargo in its sole discretion, proceeds of the Revolving Loan will be available exclusively for funding costs and expenses related to the Chapter 11 case, the DIP Loan Agreement and the Debtor's working capital needs, to the extent related to the Debtor's ongoing business operation. These costs and expenses include, without limitation: (i) the costs of administering the Revolving Loan in accordance with the terms of the DIP Loan Agreement, (ii) the reimbursement of all costs incurred by Wells Fargo in connection with the Chapter 11 case, (iii) all costs, including the United States Trustee fees, incurred by, through or under the CRO, (iv) the costs of managing, securing, insuring, and safeguarding the value of the Debtor's business, (v) the costs of marketing and otherwise preparing the Debtor's business for sale, and (vi) other costs and expenses related to the Chapter 11 case, the DIP Loan Agreement or the Debtor's business, all as contemplated by and provided for in the CRO Budget.

8. <u>Wells Fargo's Liens</u>. The Pre-Petition Loans and Wells Fargo's security interests in and liens upon the Wells Fargo Pre-Petition Collateral and the Collateral shall be recognized and allowed as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses and perfected.

9. <u>Carve-Out for Unsecured Creditors</u>. Notwithstanding any of the foregoing, and solely in the event the Debtor's business is sold pursuant to a bid/auction process as described in the Debtor's Emergency Motion for Orders (i) Approving the Sale of Substantially all of the Debtor's Assets Free and Clear of Liens, Claims and Interests, (ii) Approving Bid Procedures, and (iii) Granting Related Relief (Doc. No. 73), the "Sale Motion",

Wells Fargo has agreed, and there will be carved out from Wells Fargo's pre-petition liens, DIP Liens and super-priority administrative claims, up to $250,000 from the sales proceeds received by the Debtors pursuant to the Sale Motion, plus an amount equal to 2% of the gross sales proceeds in excess of $8,000,000 (the "***Guaranteed Distribution***"). Wells Fargo has also agreed to subordinate its unsecured deficiency claim to the claims of the general unsecured creditors to the extent of the Guaranteed Distribution. The Guaranteed Distribution and the Professional Fee Carve-Out referred to below shall be treated as "Advances" under the DIP Loan Agreement. The professional fees and expenses and other fees and costs of the Official Committee of Unsecured Creditors shall constitute administrative claims and to the extent not paid from the Professional Fee Carve-Out shall be paid from the Guaranteed Distribution prior to any distribution to general unsecured creditors. To the extent that the debtors estate does not have sufficient funds to distribute some or all of the Guaranteed Distribution or the Professional Fee Carve-Out, Wells Fargo shall fund from the DIP Loan Agreement the balance up to the Guaranteed Distribution and the Professional Fee Carve-Out.

        10.    <u>Professional Fee Carve-Out</u>. Wells Fargo's pre-petition liens, DIP Liens and super-priority administrative claims shall also be subordinated to:

        (a)    the fees and expenses of this Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(c); and

        (b)    the allowed reasonable fees and expenses approved by this Court pursuant to Sections 326, 328, 330 and 331 of the Bankruptcy Code by professionals retained under Section 327 of the Bankruptcy Code by the official committee of unsecured creditors, not to exceed $15,000 (the "***Professional Fee Carve-Out***").

11. <u>Excluded Professional Fees</u>. Notwithstanding anything to the contrary in this Final Order, neither the Professional Fee Carve-Out nor the Guaranteed Distribution shall extend to or be used to pay any allowed professional fees or any other expenses incurred in connection with any of the following: (i) an assertion or joinder in any claim, counterclaim, action, adversary proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or other relief: (A) challenging the amount, legality, validity, priority, perfection or enforceability of the obligations to Wells Fargo under the Pre-Petition Loans or the DIP Financing or Wells Fargo's super-priority administrative claim or liens on and security interests in the Wells Fargo Pre-Petition Collateral or the Collateral, or (B) preventing, hindering, or delaying Wells Fargo's assertion or enforcement of any lien, super-priority administrative claim, claim, right or security interest or realization upon any of the Wells Fargo Pre-Petition Collateral or the Collateral, (ii) a request to use the cash collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Wells Fargo, (iii) a request for authorization to obtain postpetition loans or other financial accommodations pursuant to Section 364(c) or (d) of the Bankruptcy Code other than from Wells Fargo without the prior written consent of Wells Fargo, (iv) the investigation, commencement or prosecution of any action or proceeding of any claim, cause of action, or defense against Wells Fargo or any of its officers, directors, employees, agents, attorneys, affiliates, assigns or successors, or (v) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of Wells Fargo, or which is contrary, in a manner that is material and adverse to Wells Fargo, to any term or condition set forth in or acknowledged by the DIP Loan Agreement or this Final Order.

12.    Subordination of Claim and Release.  Subject to the Debtor's assets being sold pursuant to the Sale Motion and the release by the Debtor and its estate of any claims against Joel Lehman pursuant to Chapter 5 of the Bankruptcy Code, any claims held by or scheduled liability to Joel Lehman shall be subordinated to any claims held by or scheduled liability to any other creditor of the Debtor's estate holding an allowed claim within the meaning of Section 502 of the Bankruptcy Code.

13.    Wells Fargo Release.  Wells Fargo and its respective agents, officers, directors and employees shall be deemed released and discharged from any and all claims and causes of action of any kind, nature or description arising at any time prior to the Petition Date in accordance with the Pre-Petition Loans, and all of the Debtors' acknowledgements, releases and waivers of claims granted to or in favor of Wells Fargo relating to the Pre-Petition Loans in accordance with this Final Order shall be binding upon all parties in interest in the Debtor's Chapter 11 cases and/or in any subsequently converted case(s) under Chapter 7 of the Bankruptcy Code.

14.    Preservation of Rights Granted Under this Final Order.

(a)    There shall not be entered in this Chapter 11 case or in any successor case any order that authorizes the obtaining of credit or the incurrence of indebtedness by the Debtor (or any trustee or examiner) that is (i) secured by a security, mortgage or collateral interest or lien on all or any part of the Collateral that is equal or senior to the liens of Wells Fargo, or (ii) entitled to priority administrative status that is equal or senior to the super-priority claims granted to Wells Fargo by the DIP Loan Agreement and this Final Order.

(b)    If this Chapter 11 case is dismissed or converted, then neither the entry of this Final Order nor the dismissal or conversion of this Chapter 11 case will affect the

rights of Wells Fargo under the DIP Financing or this Final Order, and all of the respective rights and remedies of Wells Fargo will remain in full force and effect as if this Chapter 11 case had not been dismissed or converted. Unless otherwise agreed to by Wells Fargo, the Debtor shall not seek, and it shall constitute an event of default if the Debtor seeks, or if there is entered, any order dismissing this Chapter 11 case. If an order dismissing this Chapter 11 case is at any time entered, such order will provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the liens and super-priority claims granted to and conferred upon Wells Fargo by the DIP Loan Agreement and this Final Order shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all of the Debtor's obligations under the DIP Financing shall have been paid and satisfied in full and all liens and super-priority claims shall, notwithstanding such dismissal, remain binding on all interested parties, and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Liens and super-priority claims.

        (c)      The provisions of this Final Order, and any actions taken pursuant to the Final Order, shall survive entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting the Chapter 11 case from Chapter 11 to Chapter 7. In no event shall any plan of reorganization be allowed to alter the terms of repayment of the DIP Financing.

        (d)      The Debtor's obligations under the DIP Financing shall not be discharged by the entry of any order confirming a plan of reorganization in this Chapter 11 case and, pursuant to Section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived such discharge.

(e) In no event shall Wells Fargo be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any Collateral securing any of the DIP Financing; and in no event shall any DIP Lien be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of the Debtor's estate pursuant to Section 551 of the Bankruptcy Code.

(f) The Debtor shall not promote a plan of reorganization which materially alters or diminishes the rights and benefits conferred upon Wells Fargo through the DIP Loan Agreement.

15. <u>Automatic Perfection of DIP Liens</u>. The DIP Liens shall be deemed valid, binding, enforceable, and non-avoidable upon entry of this Order. Wells Fargo will not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including possession of any of the Collateral) in order to validate the perfection of the DIP Liens. If Wells Fargo, in its discretion, chooses to file any such mortgages, deeds of trust, security deeds or UCC-1 financing statements, or take any other action to validate the perfection of any part of the DIP Liens, the Debtor is and its officers are directed to execute any documents or instruments Wells Fargo requests, and all such documents and instruments will be deemed to have been filed or recorded at the time and on the date of entry of this Final Order. Wells Fargo may, in its discretion, file a certified copy of this Final Order in any filing office in any jurisdiction in which the Debtor is organized or has or maintains any Collateral or an office, and each filing office is directed to accept such certified copy of this Final Order for filing and recording.

16. <u>Reimbursement of Expenses</u>. All reasonable costs and expenses incurred by Wells Fargo in connection with the negotiation and drafting of the DIP Financing Documents

(or any amendments thereto), the preservation, perfection, protection and enforcement of Wells Fargo's rights hereunder or under the DIP Loan Agreement, or in the collection of the Debtor's obligations under the DIP Loan Agreement. These costs and expenses include, without limitation, including, without limitation, all filing and recording fees and reasonable fees and expenses of attorneys, accountants, appraisers and other professionals incurred by Wells Fargo in connection with any of the foregoing, (whether any of the foregoing were incurred prior to or after the Petition Date). All such costs and expenses shall form a part of the obligations under the DIP Financing and be paid by the Debtor (without the necessity of filing any application with or obtaining further order from the Court) in accordance with the terms of the DIP Loan Agreement.

17. <u>Fees and Expenses</u>. The Debtor is authorized and directed to pay Wells Fargo (i) a monthly administrative fee of $10,000; (ii) a commitment fee of $25,000 deemed fully earned by Wells Fargo and due and payable by the Debtor upon entry of the Final Order; and (iii) other fees, expenses and charges as set forth in the DIP Loan Agreement, including reimbursement of expenses provided for in paragraph 11 above.

18. <u>Amendments to DIP Loan Agreement</u>. The Debtor and Wells Fargo are authorized to implement, in accordance with the terms of the DIP Loan Agreement any amendments to and modifications to the DIP Financing without further order of the Court on the following conditions: (i) the amendment or modification must not constitute a material change to the terms of the DIP Loan Agreement, (ii) copies of the amendment or modification must be served upon counsel for the U.S. Trustee and other interested parties specifically requesting such notice, and (iii) notice of the amendment must be filed with the Court.

19.     Events of Default; Remedies—Termination of Automatic Stay and Use of Cash Collateral.

(a)     Upon or after the occurrence of an "Event of Default" under (and as defined in) the DIP Loan Agreement, including, without limitation, an Event of Default resulting from (i) the failure of the Debtor to duly and punctually observe, perform or discharge any obligation or duty imposed upon it by this Final Order or the DIP Loan Agreement, (ii) the appointment in this Chapter 11 case of a trustee or an examiner with expanded powers (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code), (iii) the dismissal or conversion to Chapter 7 of this Chapter 11 case, (iv) the filing of a motion by the Debtor to convert this case to a case under Chapter 7 of the Bankruptcy Code or to dismiss this case, (v) this Final Order is altered, amended, vacated, supplemented, modified, supplemented or stayed or reversed on appeal or the Debtor shall file any motion to alter, amend, vacate, supplement or modify this Final Order without Wells Fargo's prior consent, (vi) relief from stay is granted to allow any creditor to foreclose upon any Collateral, or (vii) a failure of this Final Order to become final and non-appealable within 20 days after entry of this Final Order, then, in any such event, subject to the provisions of the DIP Loan Agreement, Wells Fargo shall give counsel for the Debtor notice of the default which notice may be telephonic, email, or by facsimile and shall set forth the event(s) of default. The Debtor shall have seventy-two (72) hours within which to cure the default(s). In the event the default(s) are not timely cured, Wells Fargo may file a motion for final relief from stay and to terminate use of cash collateral accompanied by an affidavit of default. The Court shall consider such motion on an expedited basis.

(b)     If any hearing is requested by an interested party and held regarding the exercise of any rights or remedies by Wells Fargo, the only issue at such hearing

that may be raised by any party in opposition to the exercise of any such rights or remedies shall be whether, in fact, an Event of Default has occurred and is continuing. The Debtor shall be deemed to have waived its right (if any) to seek any relief (including, without limitation, relief under Section 105 of the Bankruptcy Code) to the extent that such relief would in any way hinder, delay, impair or restrict the exercise of any rights or remedies by Wells Fargo as set forth in this Order or any of the DIP Financing Documents.

        (c)     The rights, remedies, powers and privileges conferred upon Wells Fargo pursuant to this Final Order shall be in addition to and cumulative of those contained in the DIP Loan Agreement.

        20.     <u>Section 506(c) Claims</u>. The Debtor shall not (nor shall any successor in interest to any Debtor, including without limitation, any trustee in these Chapter 11 cases or any other cases under the Bankruptcy Code in which any of the Debtors is a debtor therein) assert any claim for costs or expenses of administration of the Debtor's case against any of the Collateral, pursuant to Section 506(c) of the Bankruptcy Code or otherwise

        21.     <u>Chief Restructuring Officer</u>. As additional adequate protection to Wells Fargo, the Debtor is authorized and directed to retain Soneet R. Kapila as Chief Restructuring Officer (**"CRO"**) on a final basis, to manage and supervise, as a representative of the Debtor with full powers of substitution and all administrative and executive functions relating to the Debtor's business in accordance with the scope of authority set forth in the DIP Loan Agreement and the Chief Restructuring Officer Agreement attached to the Motion as Exhibit A. These powers include the right to sell the Debtor's business as a going concern and/or to sell any and all of the Collateral.

22.    <u>Good Faith</u>.    The terms of the DIP Financing have been negotiated in good faith and at arms' length among the Debtor and Wells Fargo and any loans, advances or other financial accommodations which are made to the Debtor by Wells Fargo under the DIP Financing are deemed to have been made and provided in good faith as that term is used in Section 364(e) of the Bankruptcy Code and are entitled to the full protection of Section 364(e) of the Bankruptcy Code if any or all of the provisions of this Final Order are modified, vacated or stayed.    Consistent with Section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Final Order are modified, vacated or stayed on appeal:

(a)    such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability or lien or claim granted or incurred by the Debtor to Wells Fargo prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any lien, priority or right authorized or created under the original provisions of this Order or pursuant to the DIP Loan Agreement; and

(b)    any indebtedness, obligation or liability incurred by the Debtor to Wells Fargo under the DIP Loan Agreement prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and Wells Fargo shall be entitled to all the rights, remedies, privileges and benefits, including, without limitation, the super-priority claims and DIP Liens created  herein and pursuant to the DIP Loan Agreement, with respect to any such indebtedness, obligation or liability.    All extensions of credit under the DIP Loan Agreement are made in reliance upon this Order, and, therefore, the indebtedness resulting from such extensions prior to the effective date of any stay, modification or vacation of this Final Order cannot (i) be subordinated, (ii) lose the priority of the DIP Liens or super-priority administrative claim status, or (iii) be deprived of the benefit of the status of the

liens and super-priority claims granted to Wells Fargo under this Final Order or the DIP Loan Agreement, as a result of any subsequent order in the Case or any superseding case of the Debtor.

23.     No Deemed Control.  By consenting to this Final Order, making credit extensions or obtaining liens on the Collateral pursuant to the DIP Loan Agreement, Wells Fargo shall not be deemed to be in control of the Debtor or its operations or to be acting as a "responsible person", "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute).

24.     Binding Effect; Successors and Assigns.  The provisions of this Final Order shall be binding upon all parties in interest in this Chapter 11 case, including, without limitation, Wells Fargo and the Debtor and their respective successors and assigns (including any Chapter 11 trustee hereafter appointed or elected for the estate of the Debtor or a Chapter 7 trustee appointed in a superseding Chapter 7 case), and shall inure to the benefit of Wells Fargo and the Debtor and their respective successors and assigns.  In no event shall Wells Fargo have any obligation to make any extension of credit to any Chapter 7 or Chapter 11 trustee appointed or elected for the estate of the Debtor.

25.     No Waivers or Modifications of Final Order.  The Debtor irrevocably waives any right to seek any modifications or extensions of this Final Order without the prior written consent of Wells Fargo and no such consent shall be implied by any other action, inaction or acquiescence by Wells Fargo.

26.     Inconsistencies.  To the extent that any provisions in the DIP Loan Agreement are inconsistent with any of the provisions of this Final Order, the provisions of this

Final Order shall govern and control, interpreted as most consistent with the terms and provisions of the DIP Loan Agreement.

27. <u>Objections Overruled</u>.  All objections to the Motion are overruled.

28. <u>Waiver of 14 Day Stay</u>.  Pursuant to Rule 6004(h), this Order shall be effective and enforceable immediately upon entry.

SO ORDERED at _____Tampa_____, Florida this _31_ day of May, 2011.

_____
K. Rodney May
U.S. Bankruptcy Judge